Good morning everyone. Edmonson v. Lincoln National Life Insurance Company. May it please the court, I appear here with co-counsel. I'm John Bell from Augusta, Georgia. Honored to appear before this rebuttal. Thank you sir. This case, though in complex in ways, in many ways taken down to its basic parts, is quite simple and involves simple terms and I think can be resolved by a simple analysis and perhaps even a common sense or common analysis of these matters. Before you do that, could you please help me with a standing issue in this matter? And what was the injury in fact here? The injury stems from... Is it the anticipated benefit? It is not the anticipated benefit, your honor. It is the concept of a fiduciary profiting from self-dealing in the property of its beneficiary and the long accepted right in equity, more recently recognized in the Amara decision for a court sitting in equity and under ERISA to require disgorgement of undue profit made by a fiduciary. It would be the same thing if a lawyer took funds in his trust account and speculating the commodities market and doubled it. The client found out the lawyer would have to give all the profit to the client, but if the lawyer lost all the money in his speculation with his client's trust funds, the lawyer would still have to make up the money due the client. Isn't there a contractual relationship here, Mr. Bell? At some point when they... Well, let me ask this. What is the harm to your client if your client has immediate access to the funds and can take them out whenever you require them? Your honor, first of all, I'd like to analogize this thing to a revocable trust. A trustee does not lose his fiduciary status because he's administering a trust that could be revoked at any time on no notice, just as the argument is that she could write a draft and have it be paid. The second, and ERISA is governed by the law of trust and the longest established trust doctrine, is that a trustee cannot end its fiduciary role so long as it continues to hold the money of its beneficiary or the funds. It has to divest it to ever end that. The idea that a trustee can go from being a fiduciary... Mr. Bell, the district court seemed to take the view, like the favor court did, that having put the funds at your client's disposal... Yes. Completely at your client's disposal, that at that moment it was as if they had handed a check to her and she could cash it or she could not cash it at her will, but it was her decision, her choice. She could do what she wanted. What is the flaw in that reasoning? Well, Your Honor, let me give a simple common sense, common everyday thing. When we talk about payment, if I owe $275 on my power bill and I pay it, I have $275 less and the power company has $275 more. The fact that I may owe a bank money and even have signed a demand note that the bank can call at any time does not end the relationship. They did not borrow money from her. They owed her money under an ERISA-governed employee benefit plan and they exercised discretion. They were fiduciaries and they cannot, under ERISA, use that fiduciary duty to profit themselves. What was the plan asset? The plan asset was initially the contributions to the insurance company to pay for the policy. The policy itself was a plan asset just as under ERISA if a plan by stock. The shares of stock are a plan asset but not the assets of the company that issued the stock. You know, you don't own part of Ford Motor Company's factories, but you own the stock. But if they sell that share of stock, dividends are paid, those funds flowing from this plan asset continue to be plan assets. And the same thing, insurance policy is just another investment thing. The plan has guaranteed to pay these life benefits to its beneficiaries. In this case, they acknowledged we owe you $10,000 on the death of your husband. Yes. And we're going to set up this retained asset account. Here's your checkbook. Here's how it works. Well, it's not a checkbook. It's a book of drafts. It's not insured. It's subject to the general creditors of the insurance company. You're absolutely correct. Here's your book of drafts. Okay. That's how it works. And it's an IOU. It's nothing more than I acknowledge IOU money and I'm going to keep it. All right. Haven't they concluded their responsibilities? The Department of Labor would not say so in that opinion. They said solely because a specific plan gave no discretion in the MetLife situation but required that. There was no exercise of discretion, therefore, no fiduciary action in selecting that vehicle. But I can't say to a client, I've settled a case and I've got $30,000 in the trust account. I'm going to keep your money and just pay you a little interest on it. You know, I'd lose my bar license because I'm a fiduciary. And they are fiduciary and as the Supreme Court said in the Pagan case, the common law trustee's most defining concern is the payment of money in the beneficiary's interest. Is your main point that the decision to use a retained asset account was itself a breach of the fiduciary duty? It was an exercise of discretion which makes them a fiduciary under ERISA. And then in exercising that discretion, they have to do it. I think perhaps the best analysis of this was in the Merriman case in Portland. Give me a yes or a no first if you can and then give me your explanation. Is the decision to pay your client using a retained asset account, is that decision something that you assert is a breach of the fiduciary duty? Under these circumstances, given that it is not, it's a twofold thing. A, who gets the money earned on that money being held? The defendants here claim that's Ms. Edmondson's money. But I can agree that in some circumstances you could use this vehicle as long as you're doing it and investing their money consistent with their best interest rather than to maximize your own profit. But that is something a fiduciary is not allowed to do under ERISA or under the common law of trust. And that is exactly what they've done. They've used their fiduciary position as a lever to get hold of beneficiaries' money and invest it for their own account and keep the money. I just need to know your position on this, Mr. Bell. So your position is not that the decision to set up the retained asset account was a breach of fiduciary duty, but how they chose to manage the account after it was set up, that's the source of the breach. I think the first step is it was an exercise of discretion. Because you can read this policy, it doesn't require it. It's an exercise which makes them a fiduciary. Having exercised discretion, they have to then comport it in a way to protect the beneficiaries' interest rather than their own. Can you tell me whether you agree or disagree with how I've just reflected your position? With some nuanced difference, I'll agree. Well, what's the nuanced difference? I'm trying to find out. I'm trying to find out where in the process you think the problem is. Is the breach at the establishment of the account? I hear you saying no, it's not the establishment of the account. It's the management of the account after it's established to benefit Lincoln that's the problem. Have I understood you right? Is there something I'm missing? Well, what I'm saying is I can come up with ways to establish accounts of this type that would be established in the interest of the beneficiaries. This wasn't done that way. I thought from your brief that you were saying that the selection in the matter of payment was also a breach of fiduciary duty. Yes. Well, that seems to be the opposite of what you just said. The argument is whether or not you could set up one, put out to bids and see who would provide the best benefit to the beneficiaries, have it insured, FDIC insured, which it's not. This is a debt of credit relationship, but it's not protected by state guarantee funds as we read it because it's not an insurance policy. It's not protected by banking authorities, insurance authorities, or the securities. They've created a little no man's land, and it is subject to the debts of creditors. If they put it in a separate account, which they could, it would not be subject to the debts of the general creditors of the insurance company. But they chose not to do that. So, you know, and they're certainly not disclosure. They call it a secure land account, and it's totally unsecured debt. I can ask my colleagues if they have any questions. Is it subject to her debts? I would think it could be garnished. You know, it's like the own bank account, you know, but they kept the money. They haven't paid it out, and folks on the street would be surprised at a court saying that you can keep the money, send somebody an IOU, and claim you've paid the debt. I know if I sent all my creditors draft books and then took all those debts off my financial statement, went and borrowed some money, I'd go to jail if I didn't, you know, for bank fraud. They haven't paid it. They've kept it, and they've invested it for their own account, and they did in the course of serving an ERISA fiduciary, which ERISA says you can't do, the common law of trust you can't do, which was incorporated into it. Thank you. Thank you very much, Mr. Bell. Mr. Patinsky. Good morning, Your Honors. May it please the Court. David Patinsky representing Lincoln National Life Insurance Company. Now, the district court didn't have any trouble finding standing in this matter. No, it didn't originally, and we did not raise that in our motion for partial summary judgment. Right. Is it before us properly? It is not before you, Your Honors. We did not raise it in the motion for partial summary judgment. Don't we always have the right and the obligation to evaluate it? Well, I think the Court can, but I think it was our view that if we ever went back, if we lost our first motion, it was a partial motion, we always had that issue. But Judge Bailson, who is a very able judge, wrote a fairly thorough and exhaustive opinion on the motion to dismiss dealing with the standing issue. So we chose to just focus on the two issues. And there are two issues. Judge Stricker, you're absolutely right. There are two issues before the Court. And if I may, I want to just deal with the first issue, which is the planned asset issue, and I think I can deal with that pretty quickly. Well, I'm interested in what you have to say about that. But I'm also, I mean, Judge Fischer notes that we have an obligation to satisfy ourselves and constitute standing, right? Yeah. So why don't you, if you would, answer the question about where's the injury here? Well, there is no injury here, Your Honor. That's our position. There's no constitutional standing. We've got a problem, right? Well, if Your Honor's fine, there's no injury, I think that's correct. But here's why there is no injury. Mrs. Edmondson got everything to which she was entitled. She was entitled to $10,000. The group policy, and we've spelled out the provisions of the group policy in our brief, provided that Lincoln could pay that with, it wasn't mandatory as in favor, but the policy provided that Lincoln could pay it with a retained asset account, in this case called a secure line account. In two separate documents, two separate documents, the claim form agreement and the booklet, Lincoln told Mrs. Edmondson that when she got her checkbook or draft book, it doesn't really matter what you call it, that she could write a check immediately for the full amount of her $10,000, and they placed the complete and unbridled discretion in her hands for how and when she wanted to receive her money. And, in fact, if the only – Is it a choice, though, to set up the secure line account an exercise of discretion? Well, it's an exercise of discretion, but the question is whether it's an exercise of ERISA discretion, and that's the other issue in the case besides the planned asset issue.  Why wouldn't it be an exercise of discretion? Setting up the method of payment. Well, because we've cited, to your honors, three cases, starting with the Lockheed case, which is decided by the Supreme Court and admittedly decided under Section 406 of ERISA. But there are three cases which make it very clear that once you set up a welfare benefit plan and you structure it, including how you choose to pay the benefits, that that does not run afoul of ERISA's fiduciary duties. And the reason it doesn't is because fiduciary status is not an all-or-nothing concept. This Court and other courts have said this over and over again. As the Supreme Court said in Pegram, you have to look at the actual activity that you're dealing with. And so the plan here permitted, expressly permitted us to do what we did. Sure, but when you say it permitted us to, isn't that just another way of saying we had discretion and we exercised discretion? I don't want to put words in Mr. Bell's mouth, but I heard him distinguish favor by saying, you know, in that case, they didn't have discretion. It was going to be paid through a retained asset account. Here, they gave themselves the flexibility to do it or to not do it, and because they gave themselves that discretion, the decision to proceed as they proceeded takes it outside the Department of Labor opinion, takes it outside of favor, makes it an exercise of fiduciary. Not ministerial. So what's wrong with that line of reasoning? Well, what's wrong with it is it doesn't deal with the cases, two sets of cases. One set is what we call the Woolsey, Pompano, Lockheed set of cases, which say that once you set up a welfare benefit plan, including how you're going to pay the benefits, even with discretion, even with discretion, that doesn't run afoul of ERISA. In Woolsey, the plaintiff wanted 50% of their benefits in stock. The plan administrator, exercising discretion, gave the plaintiff 100% of the benefit in cash. So Woolsey brought a claim saying he was entitled to 50% of its stock. The court said, even though it was an exercise of discretion, that's not a violation of ERISA. In Pompano, the plaintiff wanted a lump sum. The plan administrator, exercising discretion, gave the plaintiff monthly pension payments over several years. The court held that didn't run afoul of ERISA. That wasn't an ERISA exercise of discretion. So as the Supreme Court said in Pegram, you have to look at the particular activities, it's not all or nothing, so you have to look at the activities. So there's one line of cases which say that if you structure the plan the way you've structured it and you give the discretion to a plan administrator, which is what we were in this case, and they exercise it consistent, consistent with their lawful obligation under their plan, that's not an ERISA violation. That's a statement that you didn't violate your fiduciary duty. It's not a statement that you didn't have a fiduciary duty, right? No, that's correct. I would agree with that. And that's – their point seems to be, look, we'll talk about whether they violated it or not. The problem here is the district court seemed to say there's no fiduciary obligation. At the door, there is a fiduciary obligation. Are you telling us the district court was wrong on that? No. It was a fiduciary obligation, but you met it? Yes. I'm not telling you there's no fiduciary obligation. What I'm saying is that under the, first of all, the Lockheed-Woolsey-Pompano cases, that there's no violation of ERISA. Okay. Right? There is a fiduciary duty, Your Honor. You didn't violate it. That's correct. Not that there wasn't a fiduciary duty. Well, are you saying that the district court was wrong then when it concluded that your client was not acting as a fiduciary? Well, no. I don't think Judge Bailson really addressed in a fine way the distinctions we're now addressing, but I think he did come to the conclusion, and if you read his opinion, you'll see carefully, he came to the conclusion that this Woolsey-Pompano-Lockheed line of cases, he cites them, he discusses them in his opinion, that they make it clear, however you want to phrase it, that we didn't violate ERISA. Now, whether you say there was no ERISA fiduciary duty or there was and we didn't violate it, I mean, I would agree with Judge Jordan that we did have an ERISA fiduciary duty, but we didn't violate it. Which is slightly different than what Judge Bailson actually said, right? That's correct. That's correct, Judge Fisher. Okay. That's correct. Now, the second part of this is, even apart from the Woolsey-Pompano-Lockheed line of cases, there's another line of cases that says paying a benefit in a normal, orthodox, routine way is a ministerial act that also does not violate ERISA. Well, this is – I'm not sure you can have it both ways. If this is a ministerial act, isn't that under ERISA something you really don't have any choice about, you're just going to do it? Here, I hear you saying, on the one hand, we had a choice and we had a fiduciary obligation and we chose to go with the secure line account. So if that's the route you're running down, what makes you able to leap to the other path and then say, and it's just ministerial? How can you do that? Well, I don't think I'm leaping, Your Honor. I think what I'm doing is saying there are two sources of authority. If you look at the case law, you'll see there's one set of authority, and I've stated in my brief that it's under Section 406 of ERISA, not 1002, that says you can structure your plan the way you want it as long as you adhere to it and there's discretion, that's fine. There's another line of cases that says – and it doesn't depend on whether you've granted the benefits or denied the benefits, but where you, in a routine way, all you do is you apply the plan as it's written, and in the case that – the Kearns case in the Eighth Circuit, they actually denied the benefit, but they nevertheless still held that it was ministerial in nature to simply pay benefits. And – I'm having just a conceptual problem with that. If you've got discretion, how can it be ministerial? Well, in the Third Circuit, this court held in the Confer case that we cited, that a person performing claims processing, claims processing and calculation tasks, is performing non-ministerial – is performing non-fiduciary ministerial tasks. Sure, that's because the route has been set. Here the whole fight is over the route they picked, not the fact that the route being set, it was just all set in stone for them. Yes. Let me shift gears for just a second. Is there causation for injury if the access to the funds is in the hands of the beneficiary? In other words, Mr. Bell's argument is, as I understand it, these guys sent through an IOU and then started investing the money for their own benefit, and they want to say that's okay, and that applies in the face of everything we know about fiduciary responsibilities. How could you let that stand? And my question is to you, first, how do you respond to that? And second, what is the consequence of her being able to withdraw the money at any time she wanted? Well, the way I respond to that, Your Honor, is the way that this court, in the Mushroom Transportation case that was written by Judge Fisher and joined in by Judge Sirica, decided the issue. And that's one answer, and I'll get to my second answer in a moment. That answer is that if all you have is money on deposit with somebody that's functioning as a bank and somebody else has the right to write checks or draw on those funds, as anyone else would in a checking account situation, that that's not a plan asset, and that's not governed by ERISA. And that's what this court held in an opinion written by Judge Fisher, joined in by Judge Sirica in the Mushroom Transportation case. Now, in addition to that, you have the Department of Labor, because the Department of Labor has the right, and I'm going to cover some issues here that they've raised in their reply brief that I didn't have a chance to respond to. But the Department of Labor has the right to define what a plan asset is, because if you look at the definition of plan assets in ERISA, it says, as prescribed by the Department of Labor and its regulations. And the Department of Labor's opinion brief, which we've put in full in the record as a supplemental appendix from the Faber case, makes it very clear that when you set up a retained asset account, it is not a plan asset. And it didn't depend, and when you read that brief you will see, it doesn't depend on what Mr. Bell just said, namely the fact that in Faber the plan mandated the payment of a retained asset account. The Department of Labor explanation doesn't depend on that. What it depends on are ordinary notions of property rights. Let me quote you a language from, I think, the DOL opinion. It said it was, quote, because each plan promised its benefits in the form of a retained asset account, and the plan's stated purpose is discharged once that account is created. So here we don't have a plan that promises it in the form of a retained asset account. Well, that's getting back to the, with all due respect, Your Honor, that's getting back to the first issue we were just discussing. When you look at the second issue, the plan asset question, as addressed in the Department of Labor's opinion brief, you will see that that brief does not depend on the fact that it was mandated, mandated, that Mrs. Faber get a retained asset account. You will see that it's based solely on the nature of a retained asset account itself. And that's because, as the Department of Labor has said, this is all dependent on ordinary notions of property rights. And, in fact, this Court, in the Secretary of Labor v. Doyle case, a very recent case from this year, this Court said that when determining what a plan asset is, you look at the ordinary notions of property rights. You don't look at anything else. So you want us to follow Faber with respect? I want you to follow Faber. I want you to follow mushroom transportation. I want you to follow… Faber is directly on point. Right. Secretary of Labor, because it talks about what a plan asset is. And if I may, just one issue, if I may, that they raised in their reply brief. They, in their reply brief, cite the Supreme Court opinion in Christopher. And they say that Christopher, this is a very recent opinion by the Supreme Court, that Christopher was critical, critical of the Department of Labor filing amicus opinion briefs to express its regulatory posture. And that is a complete mischaracterization of the Christopher case decided by the Supreme Court. And here's why. In Christopher, the issue was whether pharmaceutical salesmen were governed by the Fair Labor Standards Act. And the Supreme Court found that in that case, the Department of Labor, years after this practice had been going on and pharmaceutical companies had not been treating it, not been treating it as governed by the Fair Labor Standards Act, after the fact, post hoc, the Department of Labor had passed a regulation and said it was governed. And the Supreme Court said that was wrong for two reasons. One, you can't do it post hoc, you have the decades of the companies performing the way they were performing. And second of all, it was flatly inconsistent with the regulation, with the statute. Now here, first of all, and let me just say this, at the time they said this, in the same opinion, in the same opinion, they said their prior opinions in the Auer and Chase Bank case were the general rule and the general rule was that you could express your opinion in an amicus brief. And that was not outside the norm. Let me ask you something about who had authority or control over the retained asset. Mrs. Edmondson had complete control over it. It's just like in mushroom transportation. She had complete control. Anytime she wanted to withdraw the money, she could. And in fact, after three months, she took it all out. There's no dispute about that. After three months, she wrote the check and she took it all out. She had complete, unbridled control once it was set up. It was no longer in the plan. It was within her control. And by the way, Mr. Bell said But Lincoln had some control. No. I mean, they invested. Excuse me? I say they had some control. They had no control once it was set up, Your Honor. You were investing the money. How can you say that? Because it's not any different than any other bank. Your Honor, you have a bank checking account. Well, it's different in this respect, at least as Mr. Bell would argue it, the difference is that a bank doesn't act as your fiduciary, but your arrested trustee does. And so when you keep the money and you invest it and you keep the return on the investment above a certain amount, you have used her property to your benefit. That's the line of argument. And to say we didn't have any control sort of seems to apply in the face of You were doing something with this. But, look, plan asset, the question is whether it's a plan asset under 100221A. That's the question. But that's not determinative necessarily of the first question, is it? Well, it's not the first question, but it's determinative of the question of did we have control of a plan asset, which is the second issue in the case. I agree. And that's the issue that Your Honor addressed in Mushroom Transportation. Which you didn't cite in your brief, by the way. We did cite it. You did? Oh, yes. Yes, we did, Your Honor. But you've got control and you've got plan assets. Stick with us on control for a minute, if you would, and explain and respond to Mr. Bell's argument that the right analogy is not to bank customer and bank. It's to a trustee and a beneficiary in a revocable trust. And so the trust beneficiary can revoke at any time, but as long as that trust is in place, the trustee is a trustee and responsible is a fiduciary. Where's the flaw in it? Can I just address Judge Fischer? Judge Fischer, maybe you couldn't find it. It's in Wray Mushroom Transportation, and it's at pages 741 and 742 of our brief. Now, the answer is you heard Mr. Bell say this is like an IOU. You heard him say that. And that's precisely, when you look at the Department of Labor opinion and you look at the Faber case, that's precisely what the courts say and the Department of Labor say. When you have this account, you're no longer in a trust-trustee situation. You are in a beneficiary-turned-account holder with the insurance company, and it's a creditor-debtor relationship. And that's what the Department of Labor says in its opinion brief, and that's what all the courts have said, like Faber, who have dealt with that issue. Even Mogul, the First Circuit case, doesn't turn on that issue. They say it's because it's a lump sum. So once you have the account, you are in a creditor-debtor relationship. It's not a trust-trustee relationship, and it is no different than a bank. The bank takes your money, invests it, and you don't know what's going on with that money. The bank invests it. You write a check. You get your check on it. It's precisely, precisely what happens here. And it's not true that there's no coverage. There's no coverage because you have state guarantee laws that cover these up to $300,000 of losses in these kinds of accounts. So it is not any, really not different from a bank account. And so the answer is it's not a trust relationship at that point. It's a creditor-debtor relationship, precisely what the Department of Labor said in its opinion brief, precisely what Faber said. Let me see if my colleagues have any other questions. Mr. Patinsky, thank you very much. Mr. Bell. I do hope I have my five full minutes. I'm not sure because I know I went over. Oh, we'll probably give you a little more than the five minutes. Thank you. Appreciate the thanks. Several points. A debtor-creditor relationship, certainly. They owe her the benefits, the death benefits, because they've never paid them. It's not a creditor where they've gone out and borrowed money. And the bank analogy, it's the perfect analogy because when I go to the bank, whether I'm depositing money or withdrawing money or making a loan, that's a commercial non-fiduciary relationship. I go down the hall to the bank trust department and put my money with them. Even if it's under an arrangement, I can withdraw it at any time, and that bank trustee, either the corporate or the individual trust officer, invests that man money for his own account or the bank's account and does not account to me for the profit. He's breached his duty, and I'm entitled. And it's long been recognized that you can do that. I go back to Magruder v. Drury, Supreme Court decision in 1914. A trustee cannot profit from his beneficiary's money. I don't think anybody's going to argue with you on that point alone. What we're trying to figure out is are they still acting in a fiduciary capacity at that point in time. I got the sense I got ships passing in the night. If they had paid the money. What about the Department of Labor's assertion? The Department of Labor is jealous of one concept, and it's the Lockheed case, well states it, and that is the settler function. They want to encourage employees to have employee benefit plans. The settler function, particularly as to welfare plans, basically says you can do anything you want. If you want to put in your benefit plan that all employees who stay with the company 20 years get a brand new pink Cadillac, and that's in the benefit plan, and somebody hits 20 years and they get a brand new pink Cadillac, the Department of Labor would say fine. And they're jealous because they don't want to micromanage what's put in the plan in the settler, or the creation state by the employer. We're not talking about the insurance company hired to provide the benefits and to manage the thing and to exercise discretion. But they want to encourage it. And that's what they say happened in MetLife because it was in the SPDs. Now, they issued their letter. The only difference between Labor and this case is that the MetLife plan said you are going to get a retained asset account, and in this case they said you could get a retained asset account. No. Is that the legal distinction that you hang your hat on? That is certainly a distinction. We think Mogul is better reasoned. I'm not going to adopt the whole thing because I think Faber was incorrectly done because I think it encourages – The Department of Labor is just wrong. Well, we met with them a bunch before this, as did a lot of other people. But I'd like to note footnote seven of their opinion, and they suggested that if the court might want to remand it, when the motion was made was in the pre-Amara days when all the circuits who had ruled on this issue said that if there's a conflict between SPD and the plan document itself, the SPD controls. The Supreme Court, after this letter was written, and after we had argued Faber, flipped the whole thing around. They said it's a description of the plan, but it is not the plan. It should accurately and simply describe it, but the governing document is the plan itself, and in most cases where you've got a group policy, it becomes part of the plan itself. It's not the SPD. But even given in those pre-Faber days, in their footnote, they suggested sending it back for further enforcement, which contemplates in the DOL's mind that might change the effect. Now, here the policy didn't authorize it. It's silent as to that. Yeah. Is the Department of Labor opinion in favor something that, in this case, we should be giving some deference to? Does it deserve skim more deference? Does it deserve any kind of attention or deference? Yeah, I think skim more deference is appropriate. These gentlemen are men of very good will. They spend their life in it, and as I just mentioned, they are militant about trying to preserve not Lincoln's right to just do anything with people's money, but the right of an employer to create what plan he wants. And it's just like the court in Maryland has said, if they said it will be a retained asset, then it's not anything wrong using retained asset. If they had a hard non-discretionary formula for the interest, that would be okay. And they said, and this is good because then you have different, when it's put in the plan originally, you have disclosure between the carrier that, look, we've got a way to make money. And it's a bargaining rate, and you could bargain between different carriers for the best rate for your beneficiaries. Here, they just do it ipso facto. The employee or the employee's descendants did. The carrier's got the money. The plan just kind of lost interest, and then let's go see how much money we can make. And that hasn't gone into the rate structure. It hasn't gone into the bargaining and all. It's bad business, other than being a fiduciary coming into possession of money in the course of exercise and discretion. And we were like clearly on the wolves at Pompano in those cases because there was no dispute. They were analyzing the wisdom of the fiduciary's exercise of those things. And they said they've got to preserve assets for the plan. They can't waste plan. They have to recognize that if they gave everybody lump sum when they don't have to, they might have a solvency problem. Now, you heard opposing counsel say that maybe Judge Bailson got it wrong when he said that Lincoln wasn't acting as a fiduciary. But nevertheless, even if they were, they didn't breach it. Do you lose if we come to that conclusion? If you simply affirm his opinion. No. Do you lose if we come to their analysis? He never said they were acting in a fiduciary. What's that? He never said they were acting, though he did recognize they were exercising discretion. Okay. He never said that. In fact, he said in that opinion, and this is the strangest thing about it, he said that in the 12B motion he ruled against us on the fiduciary by exercise of discretion. And I read and reread and reread that district court, the 12B decision. It's just not in there. And I'm not sure whether he's trying to throw the issue to this body because he, I think, genuinely and honestly anguished over the favor on one side and mogul on the other and the lack of clear guidance from Third Circuit decisions. He asked us both in argument, what are the Third Circuit cases that I should be looking at? And we've got, you know, such as the Bricklayers and other cases, Shrine and others, that are real clear about exercise of discretion makes you a fiduciary. And, you know, finding out whether or not Mr. Edmundson was dead was ministerial. If we decide that the district court should have said that in this case he exercised, there was an exercise of discretion on the part of Lincoln, then where are we? I think it should be remanded for further proceedings. And I think you would have given him the answer. He clearly in argument and in his decision said it had not been answered by this court, that this discretion takes on fiduciary duties and the extent of them and whether or not breached I think are issues he has not resolved. But there are other issues that we could resolve and still affirm on a different basis. We hope you don't do that. But you can affirm anything. I don't doubt the power of this court. I think that that's the appropriate thing. But I also think while none of us have touched on it a lot, this plan asset thing and the wisdom of Acosta and Doyle, and then I think I forgot whether it was Ryan or one of them in the dissent, this court cited Acosta but didn't analyze it. But this is the classic thing. I'm not too persuaded by Acosta. If fiduciary duty is to be defined both by in a functional approach and defined broadly, as this court and the Supreme Court have all said clearly, why should not that fit in hand and glove to the identification of plan assets? But I think under the law of trust, which is a part of the law of property, fiduciary funds or funds that flow from a plan asset would continue to be fiduciary funds until fully divested by those in control of it. Let me ask my colleagues if they have any other questions. I apologize. I have one. I'd like to kind of end it with where we started. What is your argument for causation? If you say you've got some injury here, what's the argument for causation if whatever injury flowed was something that your client could have addressed in an instant with a strong plan? Okay. First of all, there's no disclosure that they are going to retain. They didn't fund an account. There's no security in a secure. They ought to call it an unsecure line. They did not define that. Stick with me. Okay. I think it's clear that she was on notice and understood you can write a check for the full amount the second you get this. So she knows that and she is in a position to make that choice the minute it comes into her hands. How does causation work for any injury you suggest happen if she can, if it's her choice, her selection? Okay. I don't think there's any evidence to find that she consented in a breach of fiduciary duty or in self-profiting and the court should not condone self-profiting and throw out all the long lines of cases. But the plan was silent on the method of payment. Yes. They didn't promise they would do X or Y. Well, it said pay immediately and I think to any person on the street pay immediately would contemplate divesting yourself of the money and putting it in someone else's hands. But this is a fiduciary coming into possession of funds on the course of fiduciary service and a risk of government plan and self-profiting from it and not disclosing it. And we think that's under the clear authority is wrong and the remedy for that is disgorgement and those are well established. We understand your position. And we thank both counsels. Thank you. And I appreciate it to the extent and I apologize to the extent I have not narrowly answered the questions as addressed. But thank you very much, Your Honor. Thank you both very much. We'll take the case under advisement.